# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CARLOS O. GARZA,

        Plaintiff,

    v.                                  Case No. 12-C-1056

WAUTOMA AREA SCHOOL DISTRICT,

        Defendant.

---

## DECISION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Carlos O. Garza filed an action against defendant Wautoma Area School District (the "District") alleging a violation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq., and 42 U.S.C. § 1981. Garza worked as a custodian for the District from June 13, 2005 until he was terminated on August 18, 2011. Garza alleges that the District discriminated against him on the basis of race and national origin and retaliated against him for complaining about discrimination. Before me now is the District's motion for summary judgment on Garza's claims. For the following reasons, the District's motion will be granted.

## I. SUMMARY JUDGMENT METHODOLOGY

Summary judgment is proper if the submitted evidence demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material" means that the factual dispute must be outcome-determinative under law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). A "genuine" issue

must have specific and sufficient evidence that, were a jury to believe it, would support a verdict in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the burden of showing there are no facts to support the non-moving party's claim. *Celotex*, 477 U.S. at 322. In determining whether summary judgment is proper, a court must construe the evidence in the light most favorable to the non-moving party. *Ramos v. City of Chicago*, 716 F.3d 1013, 1014 (7th Cir. 2013). There is no genuine issue of material fact, and therefore no reason to go to trial, when no reasonable jury could find in the non-moving party's favor. *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012).

This district, like most, has enacted local rules that are intended to focus both the court and the parties on the essential question in deciding any motion for summary judgment, namely, whether there are genuine disputes as to any facts that are material to the disposition of the case. Thus, the moving party is required to file along with the motion either a statement of material facts to which the parties have stipulated or a statement of proposed material facts as to which the moving party contends there is no material issue and that entitle the moving party to judgment as a matter of law. Civil L. R. 56(b)(1). The statement of proposed facts is to consist of short numbered paragraphs and include within each paragraph specific references to the affidavits, declarations, or other parts of the record that support the fact set forth in that paragraph. Civil L. R. 56(b)(1)(C)(i).

The party opposing the motion must then file a response to the moving party's statement of undisputed facts which is intended to make clear which, if any, of those facts are in dispute, and to set forth any additional facts that bear on the motion. The opposing party's response must therefore reproduce each numbered paragraph of the moving party's statement of facts followed by a response to each paragraph, including when the fact is disputed, a specific reference to the affidavit,

2

declaration, or other part of the record that supports the claim that a genuine dispute exists as to the fact stated by the moving party. Civil L. R. 56(b)(2)(B). If the opposing party believes there are additional facts that prevent entry of summary judgment, the party should include in its response to the motion a statement, consisting of short numbered paragraphs, setting forth such additional facts, including references to the affidavits, declarations or other parts of the record relied on as support. Civil L. R. 56(b)(2)(B)(ii).

The rule warns parties that the court will deem uncontroverted statements of material fact admitted for purposes of deciding the motion for summary judgment. Civil L. R. 56(b)(4). In addition, parties are instructed that assertions of fact in their memoranda or briefs are to refer to the corresponding numbered paragraph in the statement of facts, statement of additional facts, or statement of stipulated facts. Civil L. R. 56(b)(6).

When properly followed, the local rule governing motions for summary judgment allows the court to easily discern which facts are in dispute and, where the law permits, save both the parties and the court the time and expense of trial. When the rule is not followed, however, it makes the entire process more difficult and time-consuming. In this case, for example, Garza failed to properly respond to many of the District's proposed statements of fact. Rather than set forth a simple admission or denial to the District's proposed facts, Garza offered his own version of the same facts, interspersed his response with additional facts that were not responsive to those set forth by the District, or declined to answer because the facts allegedly concerned an individual's "state of mind." For example, Proposed Facts 137 and 138 state that Kasuboski never made or witnessed any other employees make racially derogatory remarks to Mr. Garza. Garza responded to each: "It is not possible to admit or deny this averment because it concerns Kasuboski's state of mind and

3

therefore is denied." (Pl's. Resp. to DPFOF, ¶ 138, ECF No. 30.)  There are several problems with this response.  First, the Federal Rules of Civil Procedure and this Court's local rules do not contain an exception for responding to proposed facts that relate to an individual's state of mind.  Garza's repeated "state of mind" objection thus has no basis in law, and it does not help Garza satisfy his burden of demonstrating genuine issues of material fact.  Second, even if the law recognized a state of mind exception, Garza's response would still be improper as to proposed facts in the example cited above.   Whether Kasuboski ever made or witnessed another employee making racially derogatory comments to Garza is not a statement about Kasuboski's state of mind; it is a statement about what he said or heard.  Garza's failure to respond directly to the proposed fact suggests either carelessness or a fear that a direct response will harm his interests.  By itself, such noncompliance constitutes grounds to strike Garza's response and deem the District's  statement of facts uncontroverted.  *See Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809–10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with Local Rule 56.1, the court chooses to ignore and not consider the additional facts that a litigant has proposed.").

The Seventh Circuit has repeatedly made clear that a "district court is not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'" *Smith v. Lamz*, 321 F.3d 680, 638 (7th Cir. 2003) (quoting *Bordelon v. Chicago Sch. Reform Bd. Of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000)); *see also Bey v. Cook County*, No. 10-C-6902, 2012 WL 5995732, at *1 n.1 (N.D. Ill. Nov. 28, 2012) (striking plaintiff's response statement of facts on ground that many responses improperly included extraneous and additional information after stating whether the defendant's proffered fact was disputed or undisputed).  In Garza's response to the

4

District's statement of facts, he frequently neglects to directly cite facts in the existing record. In addition, his statement of additional facts contains narrative statements that lack proper citation to the record. The court will not further outline specific issues in each statement or response. Suffice it to say that Garza's response to the District's statement of facts and Garza's additional facts are substantially noncompliant with Civil L.R. 56(2)(B). Consequently, the court will deem the District's statement of facts admitted for purposes of summary judgment, except where a proper response has been provided, and the court will only consider Garza's additional facts insofar as they comply with Civil L.R. 56(2)(B)(ii).

## II. UNDISPUTED MATERIAL FACTS

Garza, who is Hispanic, was hired by the District as a "Custodian II" on June 13, 2005. When he was hired, Garza became a member of Wautoma District Employees (WDE), a local affiliate of the Wisconsin Educational Association Counsel (WEAC) and was employed under a Master Agreement with the union. Dan Schuldt was the union president and one of Garza's co-workers. The District encompasses four different schools: Parkside Middle School, Wautoma High School, Riverview Elementary School, and Redgranite Elementary School. When the events giving rise to this lawsuit occurred, Tom Rheinheimer was the Principal of Parkside, Ann Fajfer was the Principal of Riverview, Cari Guden was the Principal of Wautoma High School, and Jeff Kasuboski was the District Administrator. (Def's Proposed Findings of Fact (DPFOF), ¶¶ 1-8, ECF No. 17.)

Garza was initially assigned to Parkside under the supervision of Rheinheimer. On August 8, 2007, Rheinheimer became aware that a heated argument occurred in the cafeteria between Garza and Schuldt. After conducting an investigation, Rheinheimer concluded that the

5

argument was centered on work production, employment position, and pride. He did not conclude that the argument was motivated by discrimination. (*Id.* ¶¶ 9-13.) On May 12, 2008, Kasuboski transferred Garza to Riverview to minimize confrontation with Schuldt. In February of 2009, Garza agreed to transfer back to Parkside. (*Id.* ¶¶ 31, 40.)

On January 11, 2010, Garza and Schuldt had a dispute about the placement of Garza's cleaning cart in the Parkside lobby. Schuldt was assigned to clean the lobby and apparently became upset when he found Garza's cleaning cart left there. According to Garza, Schuldt yelled at him to remove his cart and said "Don't you understand English, or are you just a dumbass." Garza also claims that Schuldt directed several racial slurs towards him and threw or kicked his cart. Garza felt physically threatened by Schuldt and called 911. Rheinheimer and Kasuboski investigated the incident by interviewing Garza and Schuldt, taking written statements, interviewing other witnesses, and reviewing security camera footage. Garza and Schuldt were placed on paid administrative leave during the investigation. Garza's claim that Schuldt had used racial slurs was not substantiated by the video footage or witness statements. Ultimately, the District concluded that Schuldt used vulgar language and shoved Garza's cart, but the District but did not find that Schuldt used racial slurs. The District also concluded that Garza violated a previous reprimand memo because he did not stay in his designated work area, which prompted the altercation in the first place. Kasuboski suspended Garza for one day with pay and suspended Schuldt for one day without pay and issued both a disciplinary memo. (*Id.* ¶¶ 54-64.)

On January 19, 2010, Kasuboski sent Garza a memo confirming an earlier telephone conversation wherein Kasuboski informed Garza that he would be temporarily assigned to Riverview School "due to circumstances beyond the District's control." (Kasuboski Decl., Ex. 9,

6

ECF No. 18.) Kasuboski explained that Garza was simply to switch jobs with Tony Jones who was working the same job as Garza at Riverside. Kasuboski noted that because both Garza and Jones had worked each other's position, they would not require extensive retraining by the District. Kasuboski further stated that the placement would take place immediately and would be reviewed again on February 2, 2010. (*Id.*)

In the meantime, Garza filed a complaint in Waushara County Circuit Court following his altercation with Schuldt seeking a restraining order against Schuldt. Garza requested that Schuldt avoid his residence and any premises temporarily occupied by him. On January 18, 2010, the Waushara Circuit Court issued a temporary restraining order, ordering Schuldt to "avoid the residences and/or any premises temporarily occupied" by Garza and to avoid contacting Garza at work. On February 2, 2010, Kasuboski received a letter from Judge Guy Dutcher of the Waushara Circuit Court advising him of the court's decision. Judge Dutcher explained that he had conducted a hearing on Garza' petition for an injunction against Schuldt and had observed that the allegations related to the employment of both parties with the District and that the District had access to more information than would be available to the court. Judge Dutcher also noted his concern that the issuance of an injunction would likely dictate employment decisions that were otherwise vested in the District and suggested it would be imprudent for him to take action without a full understanding of the consequences. Judge Dutcher noted that both Garza and Schuldt had agreed that the preferable approach would be to allow the District to decide future interactions between them subject to the grievance review procedure under the applicable collective bargaining agreement. That way, Judge Dutcher indicated, "the outcome concerning this employment dispute would be dictated by those having the most direct knowledge of its circumstances." (Kasuboski Decl., Ex. 10,

7

ECF No. 18.) With these considerations in mind, Judge Dutcher explained that the injunction was issued on agreement of the parties, with the understanding that Schuldt disputed the facts alleged by Garza, so that the District could conduct an investigation and make whatever decision it found appropriate, subject to the right of either party to challenge the District's decision under the collective bargaining agreement. (*Id.*)

Following receipt of the letter from Judge Dutcher, Kasuboski met with the WDE's governing board to discuss this new development, and it was decided that Garza should be officially transferred to Riverview under the Management Rights provision of the Master Agreement. Garza was notified on February 3 that his new assignment to Riverview would continue until June 11, 2010, at which time the District would conduct a review. Garza's hours of employment, title, pay, and position description remained the same at Riverside as compared to Parkside. (DPFOF ¶¶ 68-74.)

Garza filed several grievances against Kasuboski, Rheinheimer, and WDE Secretary Dawn Peterson related to the District's response to the January 11 incident with Schuldt. The grievances did not allege the District's response was motivated by racial discrimination. Garza was upset that the District decided to transfer him to Riverview rather than Schuldt. Among the the reasons cited by Kasuboski for transferring Garza rather than Schuldt was that Garza had previously worked at Riverside and was familiar with the duties at Riverside. (*See* Kasuboski Decl., Ex. 13 at 2, ECF No. 18-13.) In any event, the District denied all of Garza's grievances. Garza later requested to transfer to Parkside, but his request was denied on April 1, 2010, in light of the injunction Garza obtained against Schuldt. Garza filed another grievance related to the denial of this transfer request. This grievance was denied because it was untimely and Garza did not use the appropriate form. (DPFOF, ¶¶ 75-80.)

8

Garza was again transferred on May 3, 2010, this time to Wautoma High School where Guden was principal. Garza believes that several co-workers at Wautoma High discriminated against him by secluding themselves from him. Garza also contends that Guden discriminated against him by being critical of his work, by talking down to him, and by increasing his work load. (*Id.* ¶¶ 83-88.) On March 29, 2011 Garza emailed Guden to report that co-worker Dan Steffens was bothering him by confronting him about the cleanliness of areas he was assigned to clean. The email stated: "I am beginning to feel that the Racial difference that I am (HISPANIC) is a problem here at the High School." Guden scheduled a meeting with Garza and Steffens for April 6, 2011. Garza did not attend the meeting, and the following day, he was suspended for one day without pay for refusing to attend both the April 6, 2011 meeting and another meeting the following day that Guden had directed him to attend to discuss his failure to attend the meeting on April 6. (*Id.* ¶¶ 99-109.)

Garza was disciplined again on June 27, 2011, when Guden issued him a written reprimand and suspended him for three days without pay for attempting to take "Emergency Family Leave" for the death of a dog. When asked initially what the leave was for, Garza said a "death in the family." (Guden Decl., Ex. 38, ECF No. 19-11.) On July 5, 2011, Garza filed a grievance with the District stating his belief that the WDE contract definition of "family member" included his family dog. The District denied Garza's grievance on July 14, 2011, and affirmed that the policy does not include family pets. (DPFOF, ¶¶ 112-15.)

On July 27, 2011, Garza left work early allegedly because he became ill after discovering excrement spread over the women's restroom in the teachers' lounge and a nearby table and cloth. Garza claimed he became nauseous from the smell and went home. He left work again the

9

following day to seek medical treatment because he claims he felt sick from breathing in fumes from the feces that previous day. Guden learned of the incident on Monday, August 1, and investigated the incident. Guden interviewed Garza, the Assistant Principal, and other employees who had spoken with Garza after the incident. She also inspected the area where it allegedly occurred and concluded that the incident never happened. Guden concluded the Garza had lied about a doctor's note relating to the event he claims he had given the District. (*Id.* ¶¶ 117-120.)

On August 9, 2011, Guden met with Garza, the Assistant Principal, and Dan Steffens, the WDE Building Steward to discuss the July 27 incident and Garza's job performance. During the meeting, Garza was disrespectful and insubordinate in that he used profane language, questioned Guden's ability to smell, and refused to provide straightforward answers to Guden's questions. After the meeting, Guden instructed Garza to: (a) edit his time off for July 28, 2011; (b) change light bulbs in his assigned area; and (c) turn in his time sheets by Wednesday. The District contends that Garza did not comply with any of these instructions. Garza claims he did. In light of all of the incidents, Kasuboski and Guden made the decision to terminate Garza's employment for insubordination and dishonesty. On August 18, 2011, Kasuboski sent Garza a letter informing him of their decision. (*Id.* ¶¶ 120-126.)

## III. ANALYSIS

Garza brought discrimination and retaliation claims against the District under two separate statutes: Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Since Garza does not differentiate the operative facts based on the statute invoked, and the elements of his claims and methods of proof are essentially identical under either statute, this court's analysis applies equally

10

to Garza's claims under Title VII and § 1981. *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) (citing *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009)) (discrimination claim); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (retaliation claim).

## A. Garza's Discrimination Claims

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As a threshold matter, Garza must demonstrate that he suffered a materially adverse employment action. *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). The parties do not dispute that Garza suffered at least three materially adverse employment actions: 1) his one-day, unpaid suspension issued April 7, 2011, for failing to attend meetings called by his supervisor; 2) his three-day, unpaid suspension issued June 27, 2011, for attempting to take emergency family medical leave for the death of his dog; and 3) his termination for insubordination and dishonesty on August 18, 2011.

A plaintiff may establish a race or national origin discrimination claim under the direct or indirect method of proof. *Weber v. Universities Research Ass'n, Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). Garza has elected to proceed under the direct method of proof, which requires him to produce "either direct or circumstantial evidence that would permit a jury to infer that discrimination motivated an adverse employment action." *Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1071 (7th Cir. 2012). Garza cites no admissions of discrimination and instead relies on circumstantial evidence. A plaintiff can prevail under the direct method of proof "by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 720 (7th Cir. 2008). For

11

a plaintiff proceeding under the direct method using circumstantial evidence to defeat summary judgment, "all that is required to defeat summary judgment is evidence from which a rational trier of fact could reasonably infer that the defendant had [taken an adverse employment action against] the plaintiff because the latter was a member of a protected class." *Dass*, 675 F.3d at 1071 (quoting *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)). In other words, Garza bears the burden of producing evidence from which a reasonable juror could infer that he was suspended or terminated because of his race or national origin.

Garza claims that the District discriminated against him on the basis of race and national origin on numerous occasions during the course of his employment, but his claims suffer two fatal flaws. First, while Garza's summary judgment response asserts that triable issues of fact exist as to whether the District disciplined him because of his national origin, Garza provides no explicit argument to support a claim of national origin discrimination. Garza contends that his evidence satisfies the first and most common form of circumstantial evidence: "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." (Pl's Resp. Br. at 2, ECF No. 26.) (citing *Petts*, 534 F.3d at 720). However, Garza does not advance his argument beyond outlining the method of proof. Instead, Garza proceeds to discuss his retaliation claim using a pretext analysis. (*See* Pl's Resp. Br. at 2-9.) Garza either expects this court to parse the record on his behalf for evidence of discriminatory intent, or he concedes that he lacks evidence to support a race or national origin discrimination claim. The court may treat Garza's failure to delineate his discrimination argument as a waiver of his discrimination claim. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (finding that plaintiff abandoned

12

his negligence claim because he did not delineate the claim in his district court brief in opposition to summary judgment or his appellate brief); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (holding that arguments not presented to the district court in response to a motion for summary judgment are waived).

Second, even if this court were inclined to consider arguments Garza made in his response to the District's statement of facts, Garza's discrimination argument would remain unclear, as he failed to link any facts surrounding his suspensions and termination to discriminatory intent on the part of the particular individuals who made the decisions to suspend and ultimately terminate his employment. The District prompted Garza to show evidence of discriminatory intent on the part of administrators Guden, Rheinheimer, Fajfer, and Kasuboski. (*See* DPFOF, ¶¶ 127-30.) For example, Proposed Fact 127 reads: "Guden's decisions relating to Garza's employment, including the discipline and termination of Garza's employment, were not based in whole or in part on Garza's race and/or national origin." Garza responded to this and similar proposed facts with the following answer: "It is not possible to admit or deny this averment because it concerns Guden's state of mind and therefore it is denied." As noted above, this is not an appropriate response to a proposed fact, and it reflects confusion over the plaintiff's burden at the summary judgment stage of litigation. It is true that no one but Guden would have direct knowledge of her state of mind. But that does not mean that her state of mind is not a fact at issue. Indeed, since Guden was one of the individuals involved in the decision to discipline Garza and ultimately terminate his employment, her state of mind is a crucial fact and essential element of his claim. Having alleged that the District disciplined him and terminated his employment because he is Hispanic, Garza was required to produce some evidence from which a reasonable jury could infer that those responsible

13

for the decisions he claims were discriminatory acted with such a state of mind. Such evidence would normally take the form of statements or actions indicating such an intent. But instead of offering evidence of either statements or actions from which a jury could infer discriminatory intent, Garza declares that no such evidence is possible. (Pl.'s Resp. to DPFOF, ¶¶ 137-42, 148, ECF No. 30.) Evidence of discriminatory intent, either direct or indirect, is not only possible, but is essential for a plaintiff to prevail in an employment discrimination case brought under either Title VII or § 1981. The fact that such evidence may be hard to come by is not a justification for ignoring its absence. As the plaintiff, Garza has the burden of proving that he was suspended and discharged because he was Hispanic. By claiming it is not possible to offer such evidence, Garza is essentially admitting he has none. If that is the case, he is not entitled to compel the District to incur the expense of a trial.

Summary judgment is the "put up or shut up" moment in litigation, *see, e.g., Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) by which is meant that the non-moving party is required to show the court the there exists some evidence on which a jury could find in his favor. Garza has failed to offer direct evidence or indirect evidence of discriminatory intent. He has failed to construct a "mosaic" of circumstantial evidence to explain how the events surrounding his suspensions and termination could justify an inference of discriminatory intent. The District's motion for summary judgment as to Garza's discrimination claims will therefore be granted.

## B. Garza's Retaliation Claims

Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

14

hearing" under the statute. 42 U.S.C. § 2000e–3(a); *see also Durkin v. City of Chicago*, 341 F.3d 606, 614 (7th Cir. 2003) (stating that unlawful retaliation "occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination."). A plaintiff may establish a retaliation claim using either a direct or indirect method of proof. *Vaughn v. Vilsack*, 715 F.3d 1001, 1006 (7th Cir. 2013). Under the direct method, the plaintiff must provide direct or circumstantial evidence showing that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) a causal connection exists between the two. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012). Under the indirect method, a plaintiff must show that "(1) he engaged in a statutorily protected activity; (2) he met his employer's legitimate expectations . . . ; (3) he suffered a materially adverse action; and (4) he was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity." *Id.* at 309. Garza does not explicitly articulate whether he has elected to proceed under the direct or indirect method of proof. However, since Garza has not provided facts or argument intending to demonstrate that he met his employer's legitimate expectations or that he was treated less favorably than other similarly situated employees, the court will treat his claim as a direct method claim.

**1. Garza Engaged in Statutorily Protected Activity**.

Garza alleges that the District suspended and terminated him in retaliation for his discrimination complaints. The parties do not dispute that Garza's complaints of discrimination by co-workers to his supervisor on January 11, 2011, and March 29, 2011, constitute protected activities under Title VII. A formal or informal discrimination complaint to a supervisor is statutorily protected activity under Title VII. *See Davis v. Time Warner Cable of Se. Wisconsin, L.P.*, 651 F.3d 664, 674 (7th Cir. 2011) (observing that even informal complaints to supervisors are

15

within the scope of protected activities for purposes of retaliation claims).

### 2. Garza Suffered Three Materially Adverse Employment Actions.

As noted in the analysis of Garza's discrimination claims above, the parties do not dispute that Garza suffered at least three material adverse employment actions. Garza also cites his paid suspension, his transfer to Riverview on January 19, 2010, and poor performance reviews on April 30, 2010, and July 4, 2011, at least as evidence of discriminatory or retaliatory intent. By themselves, the later actions are not materially adverse employment actions and thus are not actionable.

A materially adverse action is one that would dissuade a reasonable employee from exercising his rights. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). A lateral transfer may constitute a materially adverse employment action if it affects the employee's wages, benefits, responsibilities, or working conditions. *See Mercer v. Cook Cnty., Ill.*, No. 12-2894, 2013 WL 2472569, at *5 (7th Cir. June 10, 2013) ("[A] mere transfer—without more, such as a reduction in pay or significantly diminished responsibilities or working conditions—falls below the level of an adverse employment action necessary to support a claim of discrimination or retaliation."). Garza contends that his transfer satisfies *Burlington* because the District's decision to transfer Garza rather than Schuldt sends a message to other employees that those who complain about discrimination will be transferred, while the alleged perpetrators stay where they are. However, Garza concedes that his transfer to Riverview did not result in a loss of wages or benefits, or a change in responsibilities. (DPFOF, ¶ 74.) The relevant issue is whether the transfer adversely affected Garza, not whether his co-workers perceived the transfer as a punishment, and moreover, the undisputed facts suggest that Garza's transfer was a carefully considered decision rather than

16

a punishment. After the altercation between Garza and Schuldt concerning the placement of Garza's cart on January 11, 2010, the District conducted an investigation and ultimately suspended Schuldt for one day without pay and Garza for one day with pay. (*Id.* ¶¶ 58, 63-64.) Subsequently, the District had to transfer either Garza or Schuldt because the court's restraining order prohibited contact between the two employees. (*See id.* ¶ 71.) The District elected to temporarily transfer Garza because he had previously worked at Riverview, and the District did not consider Garza's transfer final until it consulted with Garza's union. (*Id.* ¶¶ 67, 72.) Since Garza has not demonstrated that his transfer to Riverview affected his wages, benefits, or career prospects, his transfer is not a materially adverse employment action for purposes of his retaliation claim. And given the entirely reasonable explanation the District offered for transferring Garza instead of Schuldt, it doesn't even amount to evidence of discrimination.

Garza's performance reviews also do not constitute materially adverse employment actions as a matter of law. A negative performance review, under some circumstances, could constitute a materially adverse action. *See Silverman v. Bd. of Educ. of Chicago,* 637 F.3d 729, 741 (7th Cir. 2011) (holding that negative performance evaluations of a teacher constituted a materially adverse employment action for purposes of a retaliation claim). However, the majority of courts in this circuit have held that negative evaluations and performance plans are not adverse employment actions, especially when the evaluation or plan does not impose additional job duties on the employee. *See, e.g.*, *Davis v. Time Warner Cable of Se. Wisc., L.P.,* 651 F.3d 664, 677 (7th Cir. 2011) ("Performance improvement plans, particularly minimally onerous ones like that here, are not, without more, adverse employment actions."). Evaluations that serve only to critique or improve an employee's performance have not been considered materially adverse employment

actions. *See Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001) ("job-related criticism can prompt an employee to improve her performance and thus lead to a new and more constructive employment relationship."). Garza's performance reviews were evaluations rather than performance improvement plans. Garza was evaluated using a 1-to-5 ranking system across thirteen performance categories (*see* DPFOF, ¶ 81; *see, eg.*, Fajfer Decl., ¶13, Ex. 65, ECF No. 21.), and Garza does not allege that the reviews imposed new duties on him or that the performance reviews directly led to the suspensions or termination. Since the performance reviews did not change Garza's duties, they are not materially adverse employment actions. Thus, only Garza's suspensions and termination will be considered as material adverse employment actions in the subsequent causation analysis.

### 3. Garza Fails to Raise a Triable Issue of Fact as to Whether His Protected Activities were the "But For" Cause of his Suspensions and Termination.

The final issue is whether Garza's discrimination complaints caused his suspensions and ultimate termination. The Supreme Court has affirmed that "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Therefore, to survive summary judgment, Garza must present evidence from which a reasonable jury could find that the District suspended or terminated him *because of* his various complaints of discrimination. *Id.* Under the direct method of proof, a plaintiff may offer direct or circumstantial evidence to satisfy the causation element of retaliation. *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 720 (7th Cir. 2005). Direct evidence requires something akin to direct admission of retaliatory conduct by the employer. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). Since Garza does not offer such evidence, he

18

must offer a "convincing mosaic of circumstantial evidence" that, when taken as a whole and viewed in the light most favorable to Garza's case, could convince a reasonable jury that Garza was the victim of unlawful retaliation. *Hobgood v. Illinois Gaming Bd.*, 722 F.3d 1030, 1038 (7th Cir. 2013). The Seventh Circuit often recites the following categories of circumstantial evidence that a plaintiff's case could include: "1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* These categories are not exclusive, and a plaintiff may offer other "bits and pieces" of evidence to meet his burden. *Id.*

Garza contends that the District offered pretextual reasons for suspending and terminating him. A plaintiff may demonstrate pretext by showing that the defendant's proffered reasons for taking adverse employment actions "(1) had no basis in fact; (2) did not actually motivate [the adverse employment actions], or (3) [were] insufficient to motivate [the adverse employment actions]" and were therefore pretextual. *Davis v. Wis. Dept. of Corrections*, 445 F.3d 971, 977 (7th Cir. 2006). "To demonstrate a material issue of fact as to pretext, a plaintiff must show that 'either (1) it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory reason or (2) that an employer's explanation is not credible.'" *Mullin v. Temco Machinery, Inc.*, 732 F.3d 772, 778 (7th Cir. 2013) (quoting *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir.2004)). Garza also contends that his negative performance reviews and the progressive discipline procedures in his union contract provide circumstantial evidence of suspicious timing. The court examines each of Garza's claims in turn.

19

Garza first contends that the facts surrounding his one-day, unpaid suspension issued April 7, 2011 for failing to attend meetings called by his supervisor raise a triable issue of pretext. The parties dispute what happened after Guden scheduled a meeting with Garza and two other custodians for 3:00 p.m. on April 6, 2011. Guden scheduled the meeting in response to Garza's March 29, 2011 email in which he was responding to Custodian Dan Steffen's criticism of the condition of the male restroom in the teacher's lounge which Garza was assigned to clean. Garza suggests in his email that the solution to the problem is to have Dan Steffens clean all the restrooms in Garza's area. Garza then wrote, "I am beginning to feel that the Racial difference that I am (HISPANIC) is a problem here at the High School also," and then closed with the statement, "Hopefully with retaliation. Thank you Everyone for your assistance." (DPFOF, ¶¶ 99, 101.) Guden called the meeting to discuss the apparent dispute in an email she sent on April 5 at 9:06 a.m. (Guden Decl., Ex. 33, ECF No. 19-6.)

Garza claims that he emailed Guden on the morning of April 6, 2010 to ask for more information about the meeting so that he could decide whether it would be in his interest to arrange for union representation. He also claims that he emailed Guden again shortly after 2:00 pm and stated that since he had not received a response to his previous email, he assumed the meeting would be cancelled. (PPFOF, ¶¶ 14-15.) Guden then approached Garza later that day and asked if he intended to attend the meeting. Garza asked if Guden had received his emails and she said she had not. Guden asked Garza if he was refusing to attend, and he said he was not. (*Id.* ¶ 16; Pl's Resp. to DPFOF, ¶ 102, ECF. No. 30) Despite his statement that he was not refusing to attend the meeting scheduled for later that day, Garza did not attend.

On April 7, 2011, Guden instructed Garza to come to her office that day to meet with District Administrator Kasuboski and his union representative to discuss his failure to attend the previous

20

day's meeting. (DPFOF, ¶ 104). Garza did not appear and Administrator Kasuboski (who was on crutches at the time) was forced to locate Garza in the building and bring him to the office. Garza went with Kasuboski to Guden's office to discuss his failure to attend the April 6 meeting and respond to his direction to come to her office on April 7. According to Guden and Kasuboski, Garza told them that he had the right to refuse to meet with his supervisor. (DPFOF, ¶¶ 105-07.) Guden considered Garza's refusal to attend the meetings on April 6 and 7 insubordination and gave him a reprimand and a one-day suspension without pay. (*Id.* ¶¶ 108-09.)

Garza does not argue that the reprimand and one-day suspension he received do not constitute reasonable discipline for repeatedly refusing to attend a meeting with his supervisor. Thus, he does not contend that "it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory reason." *Mullen*, 732 F.3d at 738. Instead, he denies that he was insubordinate and refused to attend the two meetings. In other words, he contends that the District's explanation "is not credible." *Id.* He claims that his failure to attend the April 6 meeting was a reasonable response to Guden's failure to respond to his inquiry as to the nature of the meeting. And as to the April 7 meeting, Garza claims that he did not know about it until Administrator Kasuboski came and got him. As Garza understands the law, the fact that he disputes the District's version of the facts concerning his failure to attend the two meetings is enough to defeat the District's motion. In his view, he has created a factual dispute over the District's purported reason for suspending him without pay, and a trial must be held to resolve that factual dispute.

That is not the law. As the Seventh Circuit has repeatedly stated, a court does not sit as a "super personnel department that reexamines an entity's business decisions." *Hudson*, 375 F.3d at

21

561. The issue on summary judgment is whether the defendant's version of the event is credible, not whether it is the only version. *Mullen*, 732 F.3d at 738. In other words, "[p]retext is more than a mistake on the part of the employer; it is a phony excuse." *Id.*; *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998); *see also See Hartley v. Wisc. Bell, Inc.,* 124 F.3d 887, 890 (7th Cir. 1997) (observing that an employer's explanation can be "foolish or trivial or even baseless" so long as it "honestly believed" the proffered reasons for the adverse employment action). To create a triable pretext issue the plaintiff must show either that the employer lied about why it took the adverse action or that the employer's reasons have no basis in fact. *Guerrero v. Ashcroft*, 253 F.3d 309, 313 (7th Cir. 2001). Otherwise, the federal courts would be called upon to resolve every factual dispute that could arise over an adverse employment action involving any employee holding membership in a protected class. To hold that a mere factual dispute over the employer's asserted justification for the adverse action is by itself enough to warrant a trial would indeed transform the courts into "super personnel review boards."

Under this standard, Garza's response to the District's motion falls far short of creating a factual dispute. He has failed to present evidence or argument that the District's version of the events leading to the one day suspension for failing to attend the meetings on April 6 and 7 was not credible. Indeed, it is Garza's version that lacks credibility. He claims that he believed the April 6 meeting over his email was cancelled because Guden did not respond to his email asking what it was about. But Guden stated in her email setting the meeting that it was to address the preceding week's incident that he described in his email. Moreover, though he claims he sent Guden two emails about the meeting, neither have been produced by Garza to substantiate his story. Finally, despite the fact he claims he told Guden in his second email that he assumed the meeting was cancelled, Garza

22

admits that when she approached him later that day and asked him if he was refusing to come to the meeting, he "denied that he did not intend to appear at the meeting." (Pl's Resp. to DPFOF, ¶102, ECF No. 30.) In other words, Garza admits he said he would be there and then failed to show. In light of this evidence, his claim that he thought the meeting was cancelled makes no sense.

As to the District's claim that he also failed to come to Guden's office as he was instructed to do the following day, Garza simply denies that he knew about the meeting until Kasuboski came and got him. (Pl's Resp. to DPFOF, ¶ 105.) But this conflicts with Garza's earlier admission to the District's proposed finding of fact that "On April 7, 2011, Guden instructed Garza to come to her office to meet with Mr. Kasuboski, a WDE union representative, and her to discuss his (Garza's) refusal to attend the previous day's meeting." (*Id.* ¶ 104.) Garza's failure to attend makes perfect sense in light of the statement both Guden and Kasuboski say he made when he arrived at the April 7 meeting. Both Guden and Kasuboski state that Garza told them that "he had a right to refuse to meet with Guden." (*Id.* ¶ 107.) Garza's responded to this proposed finding "denied," but then went on to say, "Garza denies asserting an *absolute* right to refuse to meet with Guden." (*Id.*, Response) (italics added). Such a response does not seriously call into question the District's version of the events, let alone show it to be incredible.

The same is true of Garza's response to the three-day suspension he received on June 27, 2011, for violating the family leave policy. The relevant issue is whether the District honestly believed that it suspended Garza for a violation of the family leave policy. *See Hartley,* 124 F.3d 887 at 890. Garza does not offer any facts that place the District's explanation for his suspension in doubt. The family leave policy does not expressly include pets (*see* Guden Decl., ¶¶ 30-31, Ex. 40, ECF No. 19-13), and no District employee has ever taken family leave for a pet (DPFOF, ¶ 118).

23

Garza may disagree with the District's interpretation of the policy, but this does not cast doubt on the legitimacy of the suspension. The fact that Garza continued to identify the deceased as "a family member" in response to being asked to identify the family member who had passed away strongly suggests that Garza knew he was not entitled to leave for the death of his dog. Therefore, Garza has failed to raise a triable issue of pretext related to his three-day suspension.

Finally, Garza likewise fails to raise a disputed issue of material fact as to the reasons for his termination. The District contends that Garza was terminated for insubordination and dishonesty. The charge of dishonesty is based on the July 27, 2011 incident when Garza left work early after he claims he discovered human excrement spread over the women's restroom in the teacher's lounge and on a nearby table and cloth. As noted above, Guden determined from her investigation that Garza had fabricated the incident. Guden's report of her investigation provides a strong factual basis for her conclusion.

According to Guden's notes, Garza made inconsistent statements about the incident when she interviewed him on August 1. He initially claimed he found feces all over the floor of the women's bathroom in the lounge and on the legs of the round table that was there as well. He placed everything on the table and the table itself in the recycle bin and left the recycle bin in the middle of the room. He told Guden that the table was now gone and he did not know who took it. Garza claimed that just before his lunch he was feeling sick and still smelling the feces so he went home to eat and took all his clothes off and discarded them. After hearing Garza's account, Guden immediately went to the bathroom area and found the recycle bin with the table cloth and other items in it. Guden states she inspected the table cloth and there was nothing on it. She then went to the bathroom and did not see or smell anything. She found the round table in the mailroom and

24

examined the wooden legs. She found nothing on the table legs but "dust bunnies" and hair. Guden states she then went and got Garza and confronted him with her findings. When asked to explain why there was nothing on the table, he told her "you can't always see it." (Guden Decl., Ex. 41, ECF No. 19-14.) Two co-employees who Garza told about the incident also gave statements that contradict Garza's account. (*Id.* Exs. 42, 43.)

Garza offers no evidence challenging the credibility of Guden's account of the incident except his own declaration. Unless the court is to be transformed into a personnel board tasked with deciding employee grievances, Garza's denial that he fabricated the incident is not enough to create a triable issue of fact.

The District's account of Garza's insubordination at the August 9 meeting with Guden, the union steward, and the Assistant Principal is similarly well-documented in a detailed memo Guden sent to Garza on August 12, 2011. (*Id.* Ex. 45.) The memo recounts Garza's disrespect and refusal to provide straightforward answers to Guden's questions, facts that Garza does not even dispute. (DPFOF, ¶ 122, and response.) Garza does dispute Guden's statement that he failed to comply with the instructions she gave him at the close of the August 9 meeting, but Garza's claim that he did comply is not enough to defeat the District's motion. Garza has offered no evidence that suggests that the District's account is not credible. And absent such failure, the District had ample cause to terminate Garza's employment. Garza therefore fails to cast doubt on the legitimacy of his termination for dishonesty and insubordination.

Several additional matters deserve comment. Garza contends that circumstantial evidence of retaliation can be found in the timing of his negative performance reviews. An employer's sudden criticism of an employee's performance may raise an inference of retaliation. *See Lang v. Illinois*

*Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004). For example, in *Lang*, an employer's criticism was suspicious because the employee had an exemplary five-year employment record and the employer's criticism began during the same month as the employee's discrimination complaints. *Id.* The District's criticism of Garza in 2010 and 2011, by contrast, was not sudden and was based on a documented decline in performance. For example, as early as December 2008, prior to Garza's protected activities, Anne Fajfer reprimanded Garza for failing to adequately clean his assigned areas. (Fajfer Decl., Ex. 56.) Fajfer again reprimanded Garza for failing to clean in March and April of 2009. (*Id.*, Exs. 57 & 58.) Thus, while Garza did not receive an official performance review in 2008 and 2009, there is substantial evidence that he was not meeting his employer's expectations during that time period. The 2010 and 2011 reviews therefore do not provide evidence from which a reasonable juror could infer that Garza's suspensions and termination were the product of unlawful retaliation.

Finally, Garza asserts that the timing of his suspensions and termination was suspicious enough to raise an inference of retaliation. A plaintiff may establish causation through evidence that the adverse action took place "on the heels of protected activity." *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994). However, suspicious timing alone rarely satisfies the causation prong of a plaintiff's burden on summary judgment in a retaliation case. *See Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006); *see, e.g.*, *Reed v. Innovative Health & Fitness Ltd.*, 259 F. App'x 875, 877 (7th Cir. 2008) (granting defendant's motion for summary judgment even though plaintiff was terminated during the same meeting in which he threatened to file a discrimination complaint). Garza contends that there is a close temporal relationship between his protected activity on March 29, 2011, and his subsequent suspension on June 27, 2011, and

termination on August 18, 2011. Standing alone, a gap of a week or several months is insufficient to raise an inference of retaliation, but Garza contends that when his suspensions and termination are viewed in conjunction with his employment contract, there is a pattern of suspicious discipline. Garza claims that under his contract, the District was required to impose progressive levels of discipline in order to terminate him, which included written warnings and disciplinary time off. Garza suggests that his suspensions were issued as part of the District's scheme to terminate him in retaliation for his discrimination complaints. Garza has not offered the contract itself as evidence, but regardless of the specific terms of the contract, this argument does not help Garza satisfy his burden at summary judgment. The record does not suggest that the District was seeking to suspend Garza for petty mistakes or misunderstandings. As discussed above, Garza has failed to cast doubt on his employer's justifications for his suspensions, and in addition, the District had numerous opportunities to suspend or terminate Garza for insubordination after March 29, 2011, but declined to do so. For example, Guden reprimanded Garza on June 7, 2011, for refusing to follow her directive to empty a garbage can. (DPFOF, ¶ 97.) In addition, Guden added an appendix to her July 4, 2011 evaluation noting that Garza had failed to work cooperatively with others on June 20, 2011. (*See* Guden Decl., Exh. 30, App. D at 3, ECF No. 19-3.) If the District had been seeking to retaliate against Garza for his protected activity, it is unlikely that they would have let these incidents pass without issuing suspensions or terminating his employment. Thus, when viewing the record as a whole, Garza fails to provide circumstantial evidence of suspicious timing from which a reasonable juror could find that Garza's suspensions and termination were the product of unlawful retaliation.

Garza has failed to demonstrate a triable issue of pretext or proffer a convincing mosaic of circumstantial evidence to support his claims of suspicious timing. Therefore, Garza has failed to

raise a triable issue of fact with regard to whether his protected activities were the "but for" cause of his suspensions and termination, and the District's motion for summary judgment as to Garza's retaliation claims is granted.

## IV.  CONCLUSION

In sum, Garza's claims fail because there is no evidence from which a jury could find that the District discriminated against Garza on the basis of his race or national origin or that the District retaliated against Garza for complaining about discrimination.  For the foregoing reasons, the District's motion for summary judgment (ECF No. 14) is granted.  The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this __14th__ day of November, 2013.


  s/ William C. Griesbach_____
William C. Griesbach, Chief Judge
United States District Court - WIED